UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
OLD ST. GEORGE'S LLC, ATK CONSULTING,
INC. AND THOMAS DeCHIARO,

                Docket No.
                08 CV 5321 (SCR)

                      Plaintiff(s),

         - against -                AFFIDAVIT

NICHOLAS BIANCO, individually, LOUIS CAMPISI,
individually, LINDA COOPER, individually,
BRUCE BARBER, individually, JOHN TEGEDER,
individually, WILLIAM D. GREGORY, individually,
THE TOWN OF YORKTOWN, and GEORGE OROS,
individually,
                      Defendant(s).
-------------------------------------------------------------------- X

STATE OF NEW YORK       )

COUNTY OF WESTCHESTER   ) ss.:

      LINDA COOPER, being duly sworn, deposes and says:

      1.    I am a defendant in the above captioned matter and submit this affidavit in support of my motion to dismiss plaintiff's complaint.

      2.    I am presently employed as the Village Manager for the Village of Ossining, a position which I have held since October 1, 2007. From January 1, 1996 until October 1, 2007, I was the Town Supervisor for the Town of Yorktown.

      3.    The Town Supervisor of the Town of Yorktown is an elected position and carries with it a two year term. As such, I won six consecutive elections and served nearly 12 years as Town Supervisor. I resigned my office effective October 1, 2007 in order to take a position as Village Manager for the Village of Ossining. Upon my resignation, the Town Clerk, Alice

Roker, was appointed to complete the last three months of my term. The office of Town Supervisor was up for election in November, 2007. Don Peters won that election and began serving as Town Supervisor effective January 1, 2008. I did not seek re-election during the November, 2007 election.

4. The Town Supervisor's role is both executive and legislative in nature. The Town Supervisor for the Town of Yorktown is a full time Chief Executive Officer carrying out decisions of the Town Board, administrating the budget and disbursing funds. The Supervisor is a member of the Town Board and presides at all Town Board meetings and votes on all matters before the Board. The Town Board is the governing and legislative body of the Town. It determines policy and is the branch of government that appropriates funds for governmental functions and services. The Board is comprised of four counsel members, each of whom is elected for a four year term, and the Supervisor, who is elected for a two year term. Among the powers granted to the Town Board are the right to adopt the budget, levy taxes, authorize bond issues, fill appointive positions, determine the salary and hours of Town employees through negotiations with its two unions, establish non-salaried advisory boards, establish special improvement districts, enact ordinances for the public safety, well being and protection of Town residents, and manage, contract and have custody of Town property.

5. During my tenure as Town Supervisor I became aware that Thomas DeChiaro purchased a parcel of property known as the Old Stone Church. That parcel of property, which is located on Route 6 in Yorktown, is only approximately .75 acres in size, and is most well known for a beautiful stone church which has been on the property for many, many years. The property is zoned R1-20, which is essentially a residential classification and which does not permit commercial uses. The property where plaintiffs have been growing grapes since May, 2007, is leased from the County of Westchester and is situated approximately 5 miles away (as the crow flies) from the Old Stone Church property.

6. The prior owner of the property was Michael Palmietto, who at one time wanted to operate the church structure as a restaurant. To do so would require a zoning change. An application was presented to the Town Board by Mr. Palmietto which sought an amendment to

2

the Yorktown Zoning Ordinance and Zoning Map changing the zoning classification for this property from R1-20 One-Family Residential to Transitional which, if approved, would allow the property to be utilized as a restaurant. I was in favor of the application. On March 1, 2005, the Town Board voted 4 to 1 to deny Mr. Palmietto's application. I was the only member of the Town Board who voted to approve the zoning change.

7. I do not know exactly when Mr. DeChiaro purchased the Old Stone Church property. However, I recall that he came to my office with a sketch of how he envisioned utilizing the property and explained his desire to renovate the interior of the church structure with counters and to convert the structure into a combination wine store/wine bar. Because this might require zoning changes, I suggested that Mr. DeChiaro speak with the Town Building Inspector and Town Planning Department to guide him through the process of obtaining Town approval of what he was considering doing with the property. I asserted no influence with the Building Inspector or the Planning Board with regard to Mr. DeChiaro's subsequent interactions with those Town agencies, and hence I played no role in connection with whatever decisions they made or opinions they may have formed. Sometime later I learned that Mr. DeChiaro was told by the Building Inspector that Mr. DeChiaro's intended use of the property would not qualify as a farm use thereby requiring that an application be submitted for a zoning change. No such application, which would need to be submitted to the Town Board, was submitted during my tenure as Town Supervisor.

8. I came to learn that Mr. DeChiaro submitted an application to Westchester County seeking to include the Old Stone Church property into Westchester County Agricultural District No. 1. Mr. DeChiaro's application was not the only application submitted that year seeking inclusion into Westchester County Agricultural District No. 1. In fact nine other applications were submitted, two of which involved other properties located within the Town of Yorktown. I and the other four members of the Town Board discussed each of the three applications and came to a consensus regarding each of them. Pursuant to my role as Town Supervisor, and with the approval of the other members of the Town Board, I sent a letter to Westchester County dated March 26, 2007 which outlined the Town Board's position regarding each of the three applications. With respect to the Old Stone Church application, I

3

paid to me but I never even heard of any allegation, until after this lawsuit had been filed, that contributions had been paid to, or requested by, other members of the Town Board.

12. The complaint contains a series of allegations that I conspired with others to prevent Mr. DeChiaro from obtaining certain county and/or state approvals, and that I destroyed records. This is pure nonsense and I deny the accuracy of these defamatory allegations. In point of fact, any records, either computer or paper based, generated with regard to Mr. DeChiaro's property were in my office when I left, and as far as I know they are still available to be accessed.

13. Plaintiff's complaint alleges that I sent letters and initiated communications to multiple officials urging that they deny Mr. DeChiaro's applications. These allegations are similarly untrue. I made one appearance before the Westchester County Board of Legislators at a public hearing and was given three minutes to convey the Town Board's position regarding all three applications pending before it concerning the three Yorktown properties. Mr. DeChiaro's application was one of them. I used my three minute allotment to address all three properties, and in so doing essentially communicated the substance of what I had written in the March 26, 2007 letter. I must emphasize that I did not urge that the application be denied, only that it had been filed prematurely.

14. The complaint also alleges that I "influenced" one or more employees of the State Liquor Authority to abstain from providing copies of certain correspondence. This is untrue – in point of fact I had no contact with the New York State Liquor Authority concerning Mr. DeChiaro's FOIL request at all. I also had nothing to do with the FOIL requests presented to the Town of Yorktown, as these requests were made after my tenure as Town Supervisor ended.

15. Plaintiff's complaint also alleges that I conspired with and influenced Bruce Barber to file a wetlands violation against plaintiffs. This too is untrue – I had no interaction with Mr. Barber in connection with the filing of any charges.

communicated the Town Board's opinion that the application was premature, largely because Mr. DeChiaro had not submitted a site plan application or rezoning to the Town detailing how he intends to use the structure. That letter also disclosed that the only applications that Mr. DeChiaro had submitted to the Town were for a building permit for renovations to a single family residence, which was granted, and a wetlands application to perform work on a single family residence, which was pending. We did not then, nor did we ever, oppose the application; rather, all we did was say that it was premature to grant the application without all concerned being made aware of how the applicant truly intended to utilize the property.

9. In Spring of 2007, Mr. DeChiaro, Robin Steinberg, who was a member of the Yorktown Planning Department Staff, and I had a meeting, which was held at Mr. DeChiaro's request, to discuss Mr. DeChiaro's plans for the property which envisioned a combination wine store/wine bar. I suggested that he file an application specifying how he was planning to use the property. No such application was ever filed. The Spring, 2007 meeting was the last interaction that I had with Mr. DeChiaro.

10. I have read the affidavit of Louis Campisi dated August 7, 2008 which was submitted in support of his motion to dismiss. In so doing, I learned that in November, 2007, Mr. DeChiaro presented a letter to the Town Board at a work session from the New York State Department of Agriculture and Markets defining the term "farming operation", and that Mr. DeChiaro appeared before the Town Board on February 26, 2008 at which time he and his attorney were told that in order to operate the property as a winery a rezoning would be required. I was not present at either of these meetings because they took place after my tenure as town supervisor had come to a conclusion. Nevertheless, the events at these meetings underscore that Mr. DeChiaro and his attorney had interaction with the Town Board after my departure, and that Mr. DeChiaro apparently continued to refuse to submit the applications required of him by the Yorktown Town Code.

11. Plaintiff's complaint contains allegations that political graft money was demanded and in some cases paid. Although the complaint makes no allegation that this sort of conduct involved me, I nevertheless am constrained to state that not only were no political contributions

paid to me but I never even heard of any allegation, until after this lawsuit had been filed, that contributions had been paid to, or requested by, other members of the Town Board.

12. The complaint contains a series of allegations that I conspired with others to prevent Mr. DeChiaro from obtaining certain county and/or state approvals, and that I destroyed records. This is pure nonsense and I deny the accuracy of these defamatory allegations. In point of fact, any records, either computer or paper based, generated with regard to Mr. DeChiaro's property were in my office when I left, and as far as I know they are still available to be accessed.

13. Plaintiff's complaint alleges that I sent letters and initiated communications to multiple officials urging that they deny Mr. DeChiaro's applications. These allegations are similarly untrue. I made one appearance before the Westchester County Agricultural Council, and one appearance before the Westchester County Board of Legislators at a public hearing and was given three minutes to convey the Town Board's position regarding all three applications pending before it concerning the three Yorktown properties. Mr. DeChiaro's application was one of them. I used my three minute allotment to address all three properties, and in so doing essentially communicated the substance of what I had written in the March 26, 2007 letter. I must emphasize that I did not urge that the application be denied, only that it had been filed prematurely.

14. The complaint also alleges that I "influenced" one or more employees of the State Liquor Authority to abstain from providing copies of certain correspondence. This is untrue – in point of fact I had no contact with the New York State Liquor Authority concerning Mr. DeChiaro's FOIL request at all. I also had nothing to do with the FOIL requests presented to the Town of Yorktown, as these requests were made after my tenure as Town Supervisor ended.

15. Plaintiff's complaint also alleges that I conspired with and influenced Bruce Barber to file a wetlands violation against plaintiffs. This too is untrue – I had no interaction with Mr. Barber in connection with the filing of any charges.

16. Based upon this affidavit, and the memorandum of law which is being submitted on my behalf by my attorney, I request that the court grant my motion to dismiss plaintiff's complaint insofar as it attempts to state a claim against me.

_____
LINDA COOPER

Sworn to before me this
20th day of August, 2008.

_____
Notary Public

RALPH F. SCHOENE
Notary Public, State of New York
No. 4713988
Qualified in Westchester County
Commission Expires 4/30/10